1

2

3

4

5

6

7

8            **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   LEOBARDO F. BENITEZ et al,                    CASE NO. CV F 08-1122 LJO GSA

12                      Plaintiffs,               **ORDER ON DEFENDANTS'**
                                                  **MOTION TO DISMISS**
13          vs.

14   JEFF WILBUR, et al,

15                      Defendants.
     _____/

16

17          Defendants The Mayflower Companies and Jeff and Lisa Wilbur move to dismiss plaintiffs' first,

18   fifth, sixth and tenth causes of action in First Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6).

19   Plaintiff s filed an opposition on February 6, 2009.  Defendants filed a reply on February 17, 2009.

20   Pursuant to Local Rule 78-230(h), this matter was submitted on the pleadings without oral argument and

21   the hearing set for February 24, 2009 was vacated.  Having considered the moving, opposition, and reply

22   papers, as well as the Court's file, the Court issues the following order.

23                            **FACTUAL BACKGROUND**

24          Plaintiffs bring a class action on behalf of themselves and a class of allegedly seasonal and

25   migrant agricultural workers who work or have worked for defendants.  Defendants operate a dairy

26   business in Tulare County.

27          Plaintiffs allege they were systematically denied overtime and minimum wages, rest and meal

28   periods and other wage and hour violations.  (First Amended Complaint ("FAC") ¶ 17.)  The allegations

                                                   1

pertinent to the motion to dismiss are as follows.  Plaintiffs allege that they and members of the putative class are and/or were engaged in agricultural labor during the relevant time period. (FAC ¶ 40.) Plaintiffs allege that a) the production of milk is "seasonal" in that production slacks during the summer months; b) that the work was of a temporary or seasonal nature; c) that there is no guarantee of employment; and d) that the workers are of the very type of laborers Congress intended Agricultural Workers Protection Act, as well as its predecessor statute, the 1976 Farm Labor Contractor Registration Act, to protect. (FAC ¶ 40.)

Defendants move to dismiss the following claims pursuant to FRCP 12(b) and 21.[1]

1.   First Cause of Action for violations of the Federal Agricultural Workers Protection Act (on the grounds that these dairy worker are not agricultural workers);

2.   Fifth Cause of Action for violations of California Labor laws regarding rest periods;

3.   Sixth Cause of Action for violations of California Labor laws regarding meal periods;

4.   Tenth Cause of Action for violations of California Labor Code Private Attorney General Act ("PAGA")

## ANALYSIS AND DISCUSSION

**A.    F.R.Civ.P. 12(b)(6) Motion Standards**

A Fed.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

---

[1] Defendants' notice of motion is entitled "Motion to Strike," yet the body of the notice moves, not to strike pursuant to Rule 12(f), but to dismiss the first, fifth, sixth and tenth causes of action to Fed. R. Civ. Proc. 12(b) and pursuant Fed. R.Civ. Proc. 21.  Rule 12(b) is a motion to dismiss and Rule 21 is misjoinder of parties.  In its opposition, plaintiff does not argue inadequate notice.  Therefore, the Court addresses the merits of defendants' arguments and construes the motion as a Motion to Dismiss pursuant to Rule 12(b)(6).

1  support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco*

2  *Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where

3  there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a

4  cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling*

5  *v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).  F.R.Civ.P. 12(b)(6) dismissal is proper

6  when "plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

7  *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102 (1957).

8        In resolving a Rule 12(b)(6) motion, the court must:  (1) construe the complaint in the light most

9  favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine

10  whether plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty*

11  *Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is "free to ignore legal

12  conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in

13  the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 765, 767 (8th

14  Cir. 2003) (citation omitted).  A court need not permit an attempt to amend a complaint if "it determines

15  that the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc.*

16  *v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).  "While a complaint attacked by a

17  Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to

18  provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a

19  formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127

20  S. Ct. 1955, 1964-65 (2007) (internal citations omitted).  With theses standards in mind, this Court turns

21  to plaintiffs' causes of action.

22  **B.**     **First Cause of Action Under AWPA**

23        Plaintiffs' first cause of action is for violation of the Migrant and Seasonal Agricultural Workers

24  Protection Act ("AWPA"), 29 U.S.C. §1801 et seq.  Defendants argue that plaintiffs have failed to allege

25  facts sufficient to prove that they are "temporary" or  "seasonal" workers, as defined in the AWPA.

26  Defendants argue that plaintiff cannot "prove" that they are employed as "seasonal or other temporary

27  nature," and therefore are not  "migrant agricultural workers" within the meaning of the AWPA.  (Doc.

28  13-1, Moving papers p. 2.)  Defendants argue there is no viable argument that a diary operation is

3

1    seasonal or temporary work.  (Doc. 13-1, Moving papers p. 2.)  Defendants argue that their business is

2    a year round operation and does not experience seasonal layoffs. Thus, defendants argue that because

3    they do not employ seasonal employees, the plaintiffs are not protected by AWPA.

4         Plaintiff argues that they have adequately plead they are engaged in agricultural employment and

5    that they are seasonal agricultural workers.

6         **1.      Agricultural Workers Protection Act**

7         The AWPA imposes a variety of requirements on employers and recruiters of migrant and

8    seasonal agricultural workers. The central protections for workers are set forth in the "Wages, Supplies,

9    and Other Working Arrangements" provisions of the Act, 29 U.S.C. § 1822 (applicable to employers

10   using migrant workers) and § 1832 (applicable to employers using seasonal workers), and in the

11   "Information and Recordkeeping Requirements" provisions of the Act, id., § 1821 (applicable to

12   employers using migrant workers) and § 1831 (applicable to employers using seasonal workers).  *See*

13   *Barajas v. Bermudez*, 43 F.3d 1251, 1260 (9th Cir.1994).  The AWPA provides many protections for

14   seasonal agricultural workers, including payment of wages when due. *Vega v. Weeks Wholesale Rose*

15   *Grower, Inc.*, 2008 WL 4224399, 8 (E.D.Cal. 2008).  The AWPA mandates that agricultural employers

16   provide to each worker, for each pay period, an itemized written statement that includes the basis on

17   which wages are paid; the number of piecework units earned, if paid on a piecework basis; the number

18   of hours worked; the total pay period earnings; the specific sums withheld and the purpose of each sum

19   withheld; and the net pay. 29 U.S.C. § § 1821(d), 1831(c).The AWPA is "remedial in nature and should

20   be construed broadly to effect its humanitarian purpose." *Barajas v. Bermudez*, 43 F.3d at 1260 (quoting

21   *Caro-Galvan v. Curtis Richardson, Inc.*, 993 F.2d 1500, 1505 (11th Cir.1993)).

22        A seasonal agricultural worker is defined in AWPA as an "individual who is employed in

23   agricultural employment of a seasonal or other temporary nature and is not required to be absent

24   overnight from his permanent place of residence."  29 U.S.C.A. § 1802 (10).  A migrant worker is

25   defined as "an individual who is employed in agricultural employment of a seasonal or other temporary

26   nature, and who is required to be absent overnight from his permanent place of residence."

27   29 U.S.C.A. § 1802 (9).

28   /////

4

1        **2.        Plaintiffs allege they are Seasonal or Migrant Workers**

2        Here, plaintiffs have alleged in the FAC that they are seasonal or migrant workers.  For instance,

3    plaintiffs allege "BENITEZ is, or was, a seasonal and/or migrant agricultural worker, within the meaning

4    of 29 U.S.C. § 1802 . . ."  (FAC ¶8.)  For each other named plaintiff, the complaint alleges that the

5    named plaintiff was or is a "seasonal and/or migrant" agricultural worker.  (See e.g., FAC ¶9, 10, 11.)

6    Plaintiff alleges the type of agricultural work that they performed while employed for defendant.

7    "Plaintiffs and the class are engaged in traditional field work relating to the farming operations on the

8    ranch, and are normally required to harvest or produce dairy products and in particular milk in its

9    unmanufactured state. Plaintiffs and the class are migrant and/or seasonal agricultural workers entitled

10   to the protections and benefits of the AWPA, 29 U.S.C. §§ 1801 et seq. and are engaged in agricultural

11   labor . ."  (FAC ¶40.)  Plaintiffs further allege: "The production of milk is 'seasonal' in that production

12   slacks during the summer months. The work was of a temporary or seasonal nature and there is no

13   guarantee of employment . . ."  (FAC ¶40.)  Thus, the complaint alleges that plaintiff are covered by

14   AWPA because they are seasonal and migrant workers within the meaning of the AWPA.

15       **3.        Facts Outside the Pleadings**

16       Defendants argue that the complaint should be dismissed because defendants' operations is not

17   "seasonal."  Defendants argue that AWPA does not apply because plaintiffs are dairy workers and dairy

18   work is year round business. Defendants ask the Court consider facts outside of the pleadings that

19   plaintiffs are year round employees.

20       The Court, however, cannot look outside the pleading and determine factual disputes.  A rule

21   12(b)(6) motion is a facial challenge to the complaint.  The court cannot consider material outside the

22   complaint, such as facts presented in briefs. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912,

23   925 (9th Cir. 2001).  As shown from the pleadings, plaintiffs allege they are seasonal and migrant

24   workers who fall with the meaning the AWPA.  The Court is not permitted on a motion to dismiss to

25   consider factual disputes outside of the pleadings.

26       Defendant cites to *Ramirez v. Decoster Egg Farm*, 194 F.R.D. 348 (D.Me 2000) for the

27   proposition that if a business is a year round operation, it is not "seasonal" and its employees do not fall

28   with AWPA. However, *Ramirez* involved a motion for summary judgment where a court may properly

5

consider, and indeed must, consider evidence outside the pleadings. A motion for summary judgment under Rule 56 addresses the sufficiency of the evidence to support plaintiff's claims. Schwarzer, Tashima, and Wagstaffe, *Federal Civil Procedure Before Trial, 9th Circuit Edition* §9:204 (The Rutter Group 2008). Whether plaintiffs may ultimately <u>prove</u> they are seasonal or migrant workers is entirely different as to whether plaintiffs have properly <u>alleged</u> they are seasonal or migrant workers. This plaintiffs have done and the Court may not ascertain the truth of the allegations.

Accordingly, the motion to dismiss the first cause of action must be denied.

**C.      Fifth and Sixth Causes of Action for Meal and Rest Periods**

Defendant moves to dismiss these causes of action on the grounds that no private right of action exists under California Labor Code §226.7. Plaintiff argues the contrary; that California law authorize a private right of action for meal and rest period wages.

The Fifth Cause of Action alleges a violation of California Labor Code §226.7 for failure to provide rest periods. Plaintiff alleges, "Defendants violated California Labor Code §226.7 and the wage orders by failing to authorize and permit rest periods and by failing to provide one hour of additional wages at the employees' regular rate of compensation for each work day that the rest periods were not provided . . ." (FAC ¶70.)

The Sixth Cause of Action alleges a violation of California Labor Code §226.7 for failure to provide meal periods. Plaintiff alleges, "Defendants violated California Labor Code §§226.7 and Wage Orders by failing to provide, authorize and/or permit mandated meal periods . . ."

California Labor Code § 226.7 states: "No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission." Labor Code § 226.7. Section 226.7(b) requires that employees be paid "one additional hour of pay" for each work day that they are required to work through a meal or rest period. *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal.4th 1094, 1104, 56 Cal.Rptr.3d 880, 887 (2007).

**1.      A Private Right of Action**

An employee has a private right of action to recover wages. "[Labor Code] Section 218 authorizes an employee or his or her assignee to 'sue directly' for any unpaid wages or penalty owed

1    under the Labor Code."[2]  *Sampson v. Parking Service 2000 Com, Inc.*, 117 Cal.App.4th 212, 220, 11

2    Cal.Rptr.3d 595, 601 (2004).  Failure to pay for meal periods or rest periods is considered a wage.

3    *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal.4th 1094 (2007).  In *Murphy*, the court held that pay

4    for omitted breaks (Lab.Code, § 226.7 ) is not a penalty, but a wage or premium.  The court held, among

5    other things, that payments for meal and rest breaks mandated by section 226.7 of the Labor Code are

6    wages. *Murphy*, 40 Cal.4th at 1102; *See Kamar v. RadioShack Corp.*, 2008 WL 2229166, 5 (C.D.Cal.

7    2008) (Although *Murphy* did not involve whether there is a private right of action to enforce IWC wage

8    orders such as Wage Order 4-2001, the decision is instructive, because the very premise of the *Murphy*

9    court was that meal and rest break premiums are "forms of wages" just like overtime and split shift

10   premiums and reporting time.); *See Guess v. U.S. Bancorp*, 2007 WL 1345194, *3 (N.D.Cal. 2007) (this

11   Court is persuaded that if squarely presented with the issue the California Supreme Court would

12   conclude that there is a private right of action under § 226.7); *Mendez v. Bottomley Distributing Co.,*

13   *Inc.*, 2007 WL 1342641, *2-4 (N.D.Cal. 2007) (the California Supreme Court implicitly held in Murphy

14   that a private right of action exists under § 226.7).  *See also Campbell v. Pricewaterhouse Coopers*, 2007

15   WL 841694 (E.D.Cal. 2007) (reaching that conclusion prior to Murphy).

16        Accordingly, a private right of action exists to enforce section 226.7 because payments for

17   missed meal and rest periods is a wage.

18        **2.    Mandating a Meal and Rest Period**

19        Defendant further argues that the fifth and sixth causes of action should be dismissed because

20   an employer does not have a duty to ensure that employees take meal and rest breaks but merely must

21   allow the employees the opportunity to take the breaks.

22        Plaintiffs allege that:

23             DEFENDANTS violated California Labor Code §226.7 and the wage
               orders by failing to authorize and permit rest periods and by failing to
24             provide one hour of additional wages at the employees' regular rate of

25   _____

26        [2] Section 218 addresses the authority of a wage claimant to enforce Article 1. Section 218 provides: "Nothing in
     this article shall limit the right of any wage claimant to sue directly or through an assignee for any wages or penalty due him
27   under this article."  A right of private action under section 218 pertains only to "this article", i.e. sections 200 to 243.  Section
     226.7 relating to meal and rest breaks is within the range of sections 200 to 243. Thus, section 218 empowers a wage claimant
28   to sue directly to recover any wages or penalties personally due the employee under Article 1.

7

compensation for each work day that the rest periods were not provided and by actively prohibiting or discouraging rest periods by putting them under excessive pressure to skip these breaks and by failing to schedule or otherwise provide the means for such rest periods to occur.  (First Amended Complaint ¶70.)

Plaintiff argues that the controlling California authority, *Cicairos v. Summit Logistics, Inc.*, 133 Cal.App.4th 949, 962, 35 Cal.Rptr.3d 243 (2005), holds that "employers have 'an affirmative obligation to ensure that workers are actually relieved of all duty,' " (quoting Dept. of Industrial Relations, DLSE, Opinion Letter No.2002.01.28 (Jan. 28, 2002) at 1.)  Thus, plaintiff argues that an employer must ensure that meal and rest periods are taken.

Several courts, however, have rejected or distinguished the holding in *Cicairos*s.  In *Brown v. Federal Express Corp.,* 249 F.R.D. 580, 585 (C.D.Cal.,2008), the court refused to follow *Cicairos.*  It noted that "[r]equiring enforcement of meal breaks would place an undue burden on employers whose employees are numerous or who, as with Plaintiffs, do not appear to remain in contact with the employer during the day."  *Id.* at 585.  The court also noted that "[i]t would also create perverse incentives, encouraging employees to violate company meal break policy in order to receive extra compensation under California wage and hour laws."  *Brown v. Federal Express Corp*., 249 F.R.D. at 585 (FedEx was required only to make meal breaks and rest breaks available to Plaintiffs, Plaintiffs may prevail only if they demonstrate that FedEx's policies deprived them of those breaks.); *accord Salazar v. Avis Budget Group, Inc.*, 251 F.R.D. 529, 533 (S.D.Cal. 2008) ("The Court agrees with the compelling reasons . . . for interpreting "provide" to mean "make available" rather than "ensure taken."); *White v. Starbucks Corp.*, 497 F.Supp.2d 1080, 1088 (N.D.Cal. 2007) (same). *See Perez v. Safety-Kleen Systems, Inc.*, 253 F.R.D. 508, 513 (N.D.Cal. 2008) (*Cicairos* can thus be read to hold that an employer is liable for failing to "provide" meal breaks if it has a policy or practice of prohibiting or discouraging meal breaks.)

The Court does not find it necessary to resolve whether *Cicairos* is controlling for purpose of resolving this motion to dismiss.  Here, plaintiffs have alleged conduct in which defendants affirmatively inhibited plaintiffs and forced plaintiffs to forego their meal and rest periods, not merely failed to ensure that rest and meal periods were taken.  Plaintiffs' allegations take the complaint out of the *Cicairos* holding of whether a duty to ensure that employees take meal and rest breaks. Since plaintiffs allege affirmative conduct by defendants which infringe upon or prohibit meal and rest periods, plaintiffs'

1  allegations are sufficient to survive the motion to dismiss.

2  **D.        Tenth Cause of Action**

3          The tenth cause of action is brought under the California Private Attorney General Act

4  ("PAGA"), Labor Code §2698.

5          Defendants argue that plaintiffs have failed to properly plead the tenth cause of action as a class

6  action.  Defendants argue that case law requires the claim to be plead as a class action.

7          **1.        The Private Attorney General Act**

8          The PAGA was adopted to empower aggrieved employees to act as private attorney generals and

9  to authorize them to seek civil penalties for Labor Code violations that previously could be assessed only

10  by state agencies.  *Dunlap v. Superior Court,* 142 Cal.App.4th 330, 336, 47 Cal.Rptr.3d 614 (2006).  The

11  PAGA states in pertinent part:

12                  "an aggrieved employee may recover the civil penalty . . . in a civil action
                    . . . filed on behalf of himself or herself and other current or former
13                  employees against whom one or more of the alleged violations was
                    committed."  (Cal.Labor Code §2699(g)(1).)
14

15          "[PAGA] empowers or deputizes an aggrieved employee to sue for civil penalties 'on behalf of

16  himself or herself and other current or former employees' as an alternative to enforcement by the

17  [State]."  *Dunlap v. Superior Court,* 142 Cal.App.4th at 336.  The California Legislature enacted PAGA

18  in 2003 in response to the Labor and Workforce Development Agency's shortage of funds and staffing

19  to enforce the state's labor laws.  *Caliber Bodyworks, Inc. v. Superior Court*, 134 Cal.App.4th 365,

20  374-75 n.6, 36 Cal.Rptr.3d 31 (2005).  The Legislature determined that shortages in funding and staffing

21  in these agencies were preventing vigorous pursuit of civil penalties and thus hampering their intended

22  deterrent effect.  *Amaral v. Cintas Corp. No. 2,* 163 Cal.App.4th 1157, 1196, 78 Cal.Rptr.3d 572, 603.

23          Under California law, the State may "assess and collect" civil penalties from employers for

24  violations of certain provisions of the Labor Code. *See* Cal. Labor Code § 2699(a). Under PAGA, an

25  "aggrieved" employee "give[s] written notice by certified mail to the [State] and the employer of the

26  specific provisions of [the Labor Code] alleged to have been violated." See Cal. Labor Code §

27  2699.3(a)(1).  Should the State thereafter decide not to investigate, the employee may "as an alternative"

28  to enforcement by the State, bring a civil action under PAGA to recover the civil penalties "on behalf

1   of himself or herself and other current or former employees." *See* Labor Code § 2699.3 (g)(1).   Civil

2   penalties recovered by aggrieved employees are distributed 75 percent to the State and 25 percent to the

3   aggrieved employees. Cal. Labor Code § 2699(i).

4        **2.     "Representative" Action**

5        Defendants argue that the PAGA cause of action must be brought as a class action, with all the

6   protections afforded to the class certification process.

7        Defendants cite *Arias v. Superior Court*, 153 Cal.App.4th 777 (2007), *review granted* (Oct. 10,

8   2007), for the proposition that the California Supreme Court granted review on the issue of whether

9   PAGA actions must be brought as a representative action or as a class action.   As both parties

10  acknowledge, *Arias* is not citeable for any controlling position because it has been taken for review. See

11  e.g., Cal.Rules Court 8.1105. No other California authority has directly addressed the issue of whether

12  a PAGA claim must be brought as a class action.

13       In the absence of authority from the California Supreme Court, this Court must use its best

14  judgment to predict how that court would decide the issue. *See General Motors Corp. v. Doupnik*, 1 F.3d

15  862, 865 (9th Cir.1993) ("Lower state court decisions may provide guidance as to the direction of the

16  State Supreme Court's probable decisionmaking," but the court is not bound to follow such decisions.)

17       The PAGA does not contain any statutory language which requires the "representative action"

18  to be brought as a class action.   The statute uses the terms "on behalf of himself and other current or

19  former employees," yet the statute is silent whether the requirements of class certification must be met.

20  Where the California Legislature intends a class action to be mandatory, the Legislature has been specific

21  in other acts.   *Compare* the Unfair Competition Laws, Cal.Bus & Prof. C §17203 ("Any person may

22  pursue representative claims or relief on behalf of others only if the claimant meets the standing

23  requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure.[3]");

24  _____

25       [3]  California's "class action" statute, Section 382, provides: "(W)hen the question is one of a common or general

26  interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one
    or more may sue or defend for the benefit of all." Cal.Code.Civ.P § 382.

27       A class action requires an ascertainable class and a well-defined community of interest among class members. The
    "community of interest" requirement embodies three factors: (1) predominant common questions of law or fact; (2) class
    representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the

28  class. *Sav-on Drug Stores, Inc. v. Superior Court*, 34 Cal.4th 319, 326, 17 Cal.Rptr.3d 906, 911 (2004).

1   Consumer Protection laws, Cal.Civ.Proc. §1781 (A consumer may " bring an action on behalf of himself

2   and such other consumers" and the suit may be "maintained on behalf of all members of the represented

3   class if [certain] conditions exist.") Thus, when a class action is required, the Legislature expressly so

4   states.  The Legislature has not expressly stated that class actions are mandated for causes of action

5   under PAGA.

6       A "representative" action is not same as a class action.   "[W]hile every class action is a

7   representative action, the converse is not the case."  *Salton City etc. Owners Assn. v. M. Penn Phillips*

8   *Co.*, 75 Cal.App.3d 184, 191, 141 Cal.Rptr. 895, 900 (1977).  "In either instance, however, justification

9   for the procedural device whereby one may sue for the benefit of many rests on considerations of

10   necessity, convenience, and justice." *Salton City etc. Owners Assn.,* 75 Cal.App.3d at 191 (Generally

11   in a class action suit seeking damages the class representative is obliged to give notice to the class.)

12       From the Court's research of recent cases, all PAGA cases have been brought as class actions,

13   and not as individual claims.  *See e.g.*, *Lu v. Hawaiian Gardens Casino, Inc.*, – Cal.App.4[th] –, 88

14   Cal.Rptr.3d 345, 350 (2009), *as modified*, 2009 WL 325544  (class action for violation of employee

15   protections contained in Labor Code section 221 (employers may not compel wage kickbacks); section

16   351 (employers may not take, collect or receive gratuities); section 450 (employers may not compel

17   employees to patronize the employer)); *Deleon v. Verizon Wireless*, 170 Cal.App.4th 519, 88 Cal.Rptr.3d

18   29, 33 (2008) (class action under PAGA for penalties for unpaid hours worked, failure to pay

19   reimbursements and overtime, waiting time penalties, and wage-statement violations, among other

20   things,); *Lopez v. Lassen Dairy, Inc.*, 2008 WL 4657740, 1 (E.D.Cal. 2008) (class action alleging eleven

21   causes of action including violation of PAGA); *Dimon v. County of Los Angeles*, 166 Cal.App.4th 1276,

22   1279, 83 Cal.Rptr.3d 576, 579 (2008) (probation officer brought action on behalf of all current and

23   former county probation officers who were not provided "with lawful meal periods" and "not paid the

24   hour of pay for each meal period not provided."); *Beebe v. Mobility, Inc.*, 2008 WL 474391, 6 (S.D.Cal.

25   2008) (in a class action, holding that  identities of the employees "by name or job title" for whom

26   Plaintiff seeks penalties is not required by the liberal pleading standards contained in Federal Rule of

27   Civil Procedure 8.)  While these cases did not decide the direct issue involved in this motion, the cases

28   imply that the class action is the norm.

1    Plaintiffs argue that the PAGA does not require class certification because plaintiffs are asserting

2 only the State of California's claims. Plaintiffs argument, however, that it is suing on behalf of the State

3 of California, has been rejected by case law.  "PAGA's language is clear and unambiguous: In a PAGA

4 representative action, plaintiffs sue on behalf of themselves and other aggrieved employees, not on

5 behalf of the State." *Deleon v. Verizon Wireless*, 88 Cal.Rptr.3d at 38.  Indeed, the PAGA is not like a

6 qui tam action, which is an action brought in the name of the state.  *Deleon*, 88 Cal.Rptr.3d at 40 (the

7 California False Claims Act allows an individual to bring a civil action "for the person and either for the

8 State of California in the name of the state, ..." Gov.Code, § 12652, (c)(1). ) The PAGA allows plaintiffs

9 bring their action "on behalf of himself or herself and other current or former employees, not on behalf

10 of the government." *Deleon*, 88 Cal.Rptr.3d at 40 (emphasis in original). Accordingly, plaintiffs are not

11 suing on behalf of the State.

12    Defendants raise a Due Process issue if a class action is not required under PAGA.  Defendants

13 argue that they "run the very real risk of facing multiple litigations over the very same claim."

14 Defendants argue that "if plaintiffs proceed as a non-class and Defendants prevail, there is nothing

15 whatsoever from stopping a different current or former employee of Defendants from filing up the very

16 same claim, as they would not be bound by that judgment."  (Doc. 15, Reply brief p. 10.)

17    In California, the principles of res judicata and collateral estoppel apply in the class action

18 context to bar later relitigation of claims by absent class members.  A class action lawsuit affects the

19 rights of persons not before the court; the individual representative represents the interests of those

20 absent persons. The success or failure of the individual litigant binds the absent class members. *La Sala*

21 *v. American Sav. & Loan Assn.*, 5 Cal. 3d 864, 871, 872, 97 Cal. Rptr. 849 (1971). Thereafter, res

22 judicata bars members of the class from relitigating claims related to the primary right already decided.

23 *Johnson v. American Airlines, Inc.*, 157 Cal. App. 3d 427, 203 Cal. Rptr. 638 (1984).  Res judicata and

24 collateral estoppel will apply as long as there was sufficient notice and opportunity to opt out, and

25 adequate representation of the class members in the earlier case.  *Johnson v. American Airlines*, 157

26 Cal.App.3d at 430-431; *City of San Jose v. Superior Court*, 12 Cal.3d 447, 463 (1974) (adequate

27 representation requirement is the product in part of the relation between the res judicata effect of the

28 class judgment on absent members and the requirements of due process.)

12

1    Defendants' argument has merit.  Absent a class action mechanism under PAGA, a defendant

2    could win against the named plaintiff and then face additional suits by other employees similarly

3    situated.  Absent a class action mechanism, a loss by the plaintiff would not bind other employees.  As

4    the California Supreme Court aptly analogized, a defendant is then open to "being pecked to death by

5    ducks. One plaintiff could sue and lose; another could sue and lose; and another and another until one

6    finally prevailed." *Fireside Bank v. Superior Court*, 40 Cal.4th 1069, 1078, 56 Cal.Rptr.3d 861, 868

7    (2007) (establishing the rule that plaintiffs must seek class certification before resolution of the merits

8    to eliminate what is known as "one way intervention").

9    Plaintiffs in a PAGA action assert claims that would otherwise be asserted by the State  Labor

10   and Workforce Development Agency.   See Cal.Gov. Code §12813.   The Labor and Workforce

11   Development Agency is authorized, pursuant to Labor Code section 210, to bring an action "in the name

12   of the people of the State of California and the Labor Commissioner and the attorneys thereof may

13   proceed and act for and on behalf of the people in bringing these actions."  The civil penalties in such

14   an action include a penalty of $100 or $200 for each failure to pay each employee, plus 25% of the

15   amount unlawfully withheld.  Lab.C. §§ 210, 225.5.

16   By analogy, a class action is similar in form as an action the Labor and Workforce Development

17   Agency for civil penalties; a single action for all alleged violations.  A class action is the same "single

18   lawsuit," without the potential of multiple lawsuits, as would be filed by the Labor and Workforce

19   Development Agency.  A "representative action," on the other hand, would permit what the Supreme

20   Court cautioned against, successive plaintiffs to peck a defendant to death with repeated claims until

21   successful.  *People v. Pacific Land Research Co.*, 20 Cal.3d 10, 17, 141 Cal.Rptr. 20, 24 (1977)

22   (Acknowledging due process rights to protect a defendant from multiple suits and other harmful

23   consequences from adjudication of an uncertified class action).

24   A class action lawsuit pursuant to the PAGA would guard against such potential violations of

25   due process.  A class action would bind all potential class members to the adjudication of the civil

26   penalties.  Indeed, absent class action requirements, aggrieved employees may be encouraged to file

27   multiple suits.  An unsuccessful suit could be refiled by a different plaintiff because PAGA permits any

28   "aggrieved employee to recover penalties."  There is an incentive to file multiple suits: "[C]ivil penalties

13

recovered by aggrieved employees shall be distributed as follows: 75 percent to the [State] and 25 percent <u>to the aggrieved employees</u>." Cal. Labor Code § 2699(I) (emphasis added).  Thus, the PAGA provides incentives to "peck away" at a defendant.  To allow a non-class action to proceed, would expose the defendant to the risk of multiple litigations, and possible inconsistent adjudications.  Whether "one may sue for the benefit of many rests on considerations of necessity, convenience, and justice." *Salton City etc. Owners Assn.,* 75 Cal.App.3d at 191.  A class action would thus bind the members to the adjudication of the class.

Further, the potential of multiple litigations has a direct impact upon limited judicial resources. Class actions serve the important function of resolving the claims of many individuals at once, saving time and reducing cost.  *Kaye v. Mount La Jolla Homeowners Assn.*, 204 Cal.App.3d 1476, 252 Cal. Rptr. 67 (1988).  This benefits the judicial system by eliminating repetitious litigation and providing a method of obtaining redress for claims too small to warrant litigation on their own.  *Richmond v. Dart Industries, Inc.*, 29 Cal.3d 462, 174 Cal. Rptr. 515 (1981).  The potential of repetitious litigations fails to serve a legitimate purpose and consumes resources that are scarce.

Accordingly, this Court is of the opinion that the California Supreme Court will interpret PAGA as requiring a class action.

**CONCLUSION**

For the foregoing reasons, the Court rules as follows:

1.     The Court DENIES the motion to dismiss the First, Fifth and Sixth Causes of Action.

2.     The Court GRANTS the motion to dismiss the Tenth Cause of Action with leave to amend.

IT IS SO ORDERED.

**Dated:     February 26, 2009                      /s/ Lawrence J. O'Neill**
                                                           UNITED STATES DISTRICT JUDGE