STAN S. MALLISON (SBN 184191)
HECTOR R. MARTINEZ (SBN 206336)
MARCO A. PALAU (SBN 242340)
LAW OFFICES OF MALLISON & MARTINEZ
1042 Brown Avenue
Lafayette, CA 94549
Telephone:    (925) 283-3842
Facsimile:    (925) 283-3426

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

(Fresno Division)

| | |
|---|---|
| LEOBARDO F. BENITEZ, PAULINO RODRIGUEZ, JOSE HERRERA, ELMER HUERE RUPAY, and ARTURO GIL ALCARAZ, on behalf of themselves and all other similarly situated individuals,<br><br>**PLAINTIFFS,**<br><br>vs.<br><br>JEFF WILBUR and LISA WILBUR (dba "the Mayflower Companies," "Mayflower Dairy," and "Rio Blanco Dairy")<br><br>**DEFENDANTS.** | Case No. 1:08-cv-01122-LJO-GSA<br><br>**PLAINTIFFS MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br><br><br>Date:    September 21, 2009<br>Time:    8:30 a.m.<br>Courtroom:    4<br>Judge:    Lawrence J. O'Neill |

I.    **INTRODUCTION**

Plaintiffs Leobardo F. Benitez, Paulino Rodriguez, Jose Herra, Elmer Huere Rupay, and Arturo Gil Alcaraz ("Plaintiffs") and defendants Jeff Wilbur and Lisa Wilbur ("Defendants" or "Mayflower/Rio Blanco"), have agreed to settle this wage-and-hour class action in accordance with the terms of the Settlement Agreement (the "Settlement") attached to the accompanying Mallison Declaration as Exhibit

1. The Settlement is for $400,000 to be distributed to all Class Members who submit valid claims; a $10,000 payment to the California Labor and Workforce Development Agency for its share of the settlement of civil penalties; the employer share of payroll taxes on Settlement Shares; the Settlement Administrator's reasonable fees and expenses; and payments to Plaintiffs, in addition to their Settlement Shares, of $5,000 each for their services as Class Representatives, and payment to Class Counsel of their reasonable attorneys' fees not to exceed 33.33% of the recovery ($133,333) and expenses not to exceed $10,000.  The Settlement covers all of Defendants' non-exempt Dairy workers in California during the time period from August 1, 2004 to the date of the preliminary approval of the settlement scheduled as September 21, 2009.  There are approximately 150 Class Members.  If approved, the average payout per potential claimant will be well more than a thousand dollars.

The Settlement is non-reversionary to Defendants and, if approved, the entire Settlement payment will be distributed as indicated above.  In the event of unclaimed settlement shares the residue will be redistributed to the Class Members who made claims on a pro rata basis.  In the unlikely event that a class member makes a claim (which would include verifying the claimant's address) and has a check mailed to them, but fails to cash that check even after reminder notices and calls are made, these uncashed check fund amounts will be donated to two public interest organizations selected by the parties:  California Consumer Protection Foundation (50%) and the Tulare Salvation Army (50%).  Both of these public interest funds provide services directed at low income workers and their families, making this disposition of unclaimed funds appropriate.  Given the nature of the process at issue, Plaintiffs' counsel does not anticipate that the monies relating to these uncashed checks is likely to be substantial.

The Settlement represents informed, closely-negotiated compromises on both sides.  The Settlement was reached after an extensive production to Plaintiffs by Defendants of the relevant payroll and timekeeping data, and extensive negotiations by the parties at the mediation and thereafter.  Based on those negotiations and a detailed knowledge of the issues present in this action, Plaintiffs and their counsel are convinced that the Settlement is the best possible recovery under the circumstances, and in the best interest of Class Members.

Specifically, counsel for Plaintiffs balanced the terms of the Settlement, including both the Settlement amount and the benefits conferred to Class Members by the Settlement, against the probable

outcome of a wide range of issues at trial. Counsel for Plaintiffs carefully considered the risks of trial and other normal perils of litigation, including the merits of the affirmative defenses asserted by Defendants, the difficulties of complex litigation, the lengthy process of establishing specific damages, the difficulty in fully analyzing and utilizing the massive number of paper documents at issue in this case, new legal decisions affecting pivotal issues in the case or the pendency of such issues before the California Supreme Court, class certification issues, and other various possible risks and delays. Counsel also considered the current economic climate – specifically in the Dairy industry at issue in this case. Plaintiffs' counsel notes that no matter how good the facts and law, every trial retains inherent risk while the proposed settlement provides a certain recovery for Class Members. Further litigation or trial of the matter would substantially delay any compensation to Class Members.

As discussed below, the Settlement satisfies the criteria for preliminary settlement approval under Federal law and falls well within the range of proper approval. Accordingly, the plaintiffs move the Court for an order conditionally certifying the settlement class, granting preliminary approval of the Settlement, appointing the Class Representatives and Class Counsel, approving and directing distribution of the Class Notice and related materials to the Class, appointing the Settlement Administrator, and scheduling a final approval hearing.

## II.    STATEMENT OF FACTS

### A.    Summary of the Litigation.

This is a wage-and-hour class action brought on behalf of Dairy workers employed by Defendants in and about Tulare County, California. Declaration of Stan S. Mallison in Support of Motion for Order: (1) Conditionally Certifying Settlement Class; (2) Preliminarily Approving Class Settlement; (3) Appointing Class Representatives and Class Counsel; (4) Approving Class Notice and Related Materials; (5) Appointing Settlement Administrator; and (6) Scheduling Final Approval Hearing ("Mallison Decl."), ¶2. *See also* Class Action Complaint, filed on August 1, 2008 (Docket No. 2); First Amended Class Action Complaint, filed on December 12, 2008 (Docket No. 8). The action is brought on behalf of Plaintiffs and approximately 150 current and former non-exempt employees for alleged violations of federal and state wage-and-hour laws. *Id.* Plaintiffs essentially allege that Defendants failed to pay overtime and minimum wages; failed to pay wages due at termination of employment;

failed to provide all legally required meal periods and rest breaks; failed to provide accurate, itemized employee wage statements and other violations as described in the complaint. See Mallison Decl. ¶¶18-30. Plaintiffs sought to certify a class composed of themselves and similarly situated individuals and to recover back wages, interest, penalties, and attorneys' fees and costs from Defendants.

After the complaint was filed, Plaintiffs conducted substantial discovery and non-discovery investigation regarding class certification and the merits of their claims. Mallison Decl.,¶¶31-33. Plaintiffs issued a formal discovery including an extensive set of document requests demanding all of the critical payroll and timekeeping information at issue in this case, and the names and contact information for Defendants' former and current employees. After meeting and conferring regarding these issues Defendants produced the core payroll and timekeeping information as well as the employee names and contact information. Mallison Decl., ¶¶31-33.

Defendants' timekeeping system is heavily "paper-based" consisting of thousands of pages of documents. *Id.* This heavy reliance on paper documents required Plaintiffs' counsel to laboriously review these documents in order to conduct their damage analysis and prepare for full litigation of this case. Much of the document and data review took place with Plaintiffs and other witnesses who guided counsel through employee time and payroll records, strengthening counsel's understanding of the case, as well as their ability to litigate effectively. *Id.*

**B.      Settlement Negotiations.**

This case was mediated before Howard Broadman, a former Tulare County Superior Court Judge. The case resolved only after extensive negotiations and a mediator's proposal. The basic terms of the agreement proposed here are those proposed by the mediator. Plaintiffs' counsel has negotiated numerous class action wage and hour settlements and believe that the settlement is fair and reasonable given the circumstances. The Settlement covers approximately 150 current and former Dairy employees of Defendants who worked between August 1, 2004 the date of the preliminary approval (scheduled for September 21, 2009) and provides substantial recovery for class members.

**III.     SUMMARY OF SETTLEMENT TERMS**

**A.      The Gross Settlement Payment.**

Under the Settlement, Defendants will make a Gross Settlement Payment of $400,000. This

payment will cover Settlement Shares to be paid to Class Members who submit valid claims; the employer share of payroll taxes on the Settlement Shares; a $10,000 payment to the California Labor and Workforce Development Agency for its share of the settlement of civil penalties; the Settlement Administrator's reasonable fees and expenses (estimated to be less than $25,000); and payments to Plaintiffs, in addition to their Settlement Shares, of $5,000 each in compensation of their services as Class Representatives and payments to Class Counsel of up to $133,333 for their reasonable attorneys' fees and $10,000 in expenses incurred in investigating the case, prosecuting the case, preparing for and negotiating at the mediation, documenting the Settlement, securing approval of the Settlement, and related tasks. Settlement, § III.A.-C. There will be no reversion of the Gross Settlement Payment to Defendants.

### B. Payment of Settlement Shares.

After the other amounts are deducted, the Gross Settlement Amount (then called the "Net Settlement Amount") will be distributed as Settlement Shares to all Class Members who submit valid claims (*see* Settlement, § III.E.3., Exh. B), based upon the following allocation formula:

> The Settlement Share for each Claimant will be based on (a) that Claimant's total number of Months of Employment during the Class Period (b) divided by the aggregate number of Months of Employment of all Participating Class Members during the Class Period (with the division rounded to four decimal places) (c) multiplied by the value of the Net Settlement Amount.

Agreement, § III.D.1. The primary benefit of this formula is that it relies upon objective evidence of the total hours of employment, which Class Members can easily review and confirm for themselves. This information is readily available from Defendants' records, and the Settlement Administrator can apply the formula in a fair and transparent manner. The parties estimate that, if all amounts sought under the Settlement are awarded, a Class Member's average Settlement Share will be approximately $1000.

Plaintiffs' counsel has reviewed this method of distribution and has determined that, on the whole, it serves the purpose of providing a simple and readily determinable method for distribution, while also allowing for a distribution that corresponds closely to the alleged damages and likely recoveries, which are based upon various theories of liability. Mallison Decl., ¶¶43-51. Plaintiffs' counsel considered other, more complicated methods, but determined that although these methods have some merit, that they were not without controversy and would likely lead to a myriad of objections

regarding their formulation and implementation. *Id.* The formula employed in the Settlement is commonly used in wage-and-hour cases, and is appropriate in this case, where most workers experience the same working conditions and have similar claims that roughly correlate with the number of hours that they have worked. *Id.* Further, although their might be marginally better theoretical methods for calculating allocations amongst class members, the costs of obtaining and processing the information necessary and to make such calculations (especially given defendants' paper based payroll system) would likely outweigh any benefits of using a more complex calculation method. The above method is simple, efficient, and uncontroversial and should be approved by the court.

### C.     Distribution of Unclaimed Funds and Uncashed Checks.

In the event that not all Class Members submit claims, the residue will be redistributed to those Class Members who do submit valid claims. Settlement, § III.D.3. The settlement agreement provides that that in the event that checks issued to Class Members are not cashed, these monies will be donated to two public interest organizations on a 50%/50% basis: 1) the California Consumer Protection Foundation, and 2) the Tulare Salvation Army. *Id.*, § III.F.11. Because these public interest organizations serve low income families in the Tulare County area, these donations are appropriate.

### D.     Scope of the Release.

The scope of the release by all Participating Class Members (all Class Members other than those who elect not to participate in the Settlement) tracks the scope of Plaintiffs' allegations:

> As of the date of the Judgment, all participating Class Members hereby fully and finally release Defendants, and its parents, predecessors, successors, subsidiaries, affiliates, and trusts, and all of its employees, officers, agents, attorneys, stockholders, fiduciaries, other service providers, and assigns, and Defendants release Class Members, from any and all claims or counterclaims, known and unknown, for or related to all claims based on or arising from or related to the allegations made in the Action, including the allegations that they were or are improperly compensated under federal, California, or local law (the "Class's Released Claims."

Settlement, § III.G.2.

### E.     Objections and Opt-Out Process

Any Class Member who so wishes may object to or comment on the Settlement; or elect not to participate in the Settlement. The Class Notice fully explains the objection/comment and opt-in procedures. Settlement, § III.F.4., Exh. C.

**F.    Termination of Settlement.**

Plaintiffs reserves the right to void the Settlement if confirmatory discovery conducted during the approval process reveals any reason why the settlement is not fair, adequate and reasonable. § III.F.7.  Defendants have the right to void the settlement if 25% of the Class Members submit elections not to participate in the settlement. § III.F.6.

**G.    Class Representative Payments; Class Counsel Attorneys' Fees Payment and Class Counsel Litigation Expenses Payment.**

By a motion to be filed prior to the Final Approval Hearing, Plaintiffs and their counsel will seek, and Defendants have agreed not to oppose, awards to Plaintiffs of Class Representative Payments of $5,000 each, in addition to their Settlement Shares, in compensation for their services as Class Representatives; and awards to Class Counsel of a Class Counsel Attorneys' Fees Payment of not more than $133,333 or 33-1/3% of the Gross Settlement Amount and a Class Counsel Litigation Expenses Payment of not more than $10,000. Settlement, § III.B.1-2.   The exact amounts requested, and their justification, will be detailed in a motion, brief, and declaration to be provided in conjunction with the final approval of the settlement.

**IV.    THE MOTION FOR PRELIMINARY APPROVAL SHOULD BE GRANTED**

**A.    Preliminary Approval of the Settlement Is Appropriate.**

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. (See 4 *Newberg on Class Actions* 4th (2002) ("*Newberg*"), § 11.41 (and cases cited therein); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).  A class action, however, may not be dismissed, compromised, or settled without the approval of the court.  Fed. R. Civ. P. 23(e).

Judicial proceedings under Rule 23, Federal Rules of Civil Procedure, have led to defined procedures and specific criteria for settlement approval in class action settlements, described in the *Manual for Complex Litigation, Third* (Fed. Judicial Center 1995) ("*Manual*") § 30.41).  The *Manual*'s settlement approval procedure describes three distinct steps:

(1) Preliminary approval of the proposed settlement at an informal hearing;

(2) Dissemination of mailed and/or published notice of the settlement to all affected Class Members; and

(3) A "formal fairness hearing," or final settlement approval hearing, at which Class Members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Id.*, § 30.41. The procedure, commonly used by federal courts and endorsed by the leading class action commentator, Professor Herbert Newberg, safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests. *See Newberg*, § 11.22 *et seq*.

The decision to approve or reject a proposed settlement is committed to the trial court's sound discretion; a court's decision to approve a class action settlement may be reversed only upon a strong showing of "clear abuse of discretion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *City of Seattle*, 955 F.2d at 1276 (in context of class action settlement, appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon strong showing of abuse of discretion).

The purpose of the preliminary evaluation of class action settlements is to determine only whether the proposed settlement is within the range of possible approval, and thus whether notice to the class of the settlement terms and conditions and the scheduling of a formal fairness hearing is worthwhile. To grant preliminary approval of this class action settlement, the court need only find that the settlement falls within the range of possible final approval, also described as "the range of reasonableness." *See, e.g., North County Contractor's Assn., Inc. v. Touchstone Ins. Svcs.*, 27 Cal. App. 4th 1085, 1089-90 (1994); *In re Traffic Exec. Ass'n*, 627 F.2d 631, 633-34 (2d Cir. 1980); *see also* 4 *Newberg*, § 11.25. In sum, preliminary approval of a settlement and notice to the proposed class is appropriate: "[i]f [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of possible approval…" *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (adding numbers).

The Settlement proposed by the parties meets this test.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 1.    The Settlement Was the Product of Informed, Non-Collusive Negotiations.

The Settlement was reached after informed, arm's length negotiations between the parties. Both parties conducted extensive investigation and discovery allowing them to assess the strengths and weaknesses of the case. As such, the Settlement is the product of non-collusive negotiations. See Mallison Decl., ¶¶43-51. Plaintiffs' counsel had access to thousands of papers of documents which were reviewed prior to and during the negotiations and was informed by numerous interviews with witnesses to the allegations. *Id*.

### 2.    The Proposed Settlement Has No "Obvious Deficiencies."

The Settlement is non-reversionary and substantial. The settlement provides for a payment of $400,000 by Defendants—an adequate amount given the relatively small size of the class (150 members) and the limited nature of the alleged violations at issue. The average settlement share will exceed $1000 substantially. All Settlement Shares to be paid under the Settlement are determined by the number of months each Class Member worked in a Covered Position. The provision for unclaimed funds to be redistributed to Class Members on a pro-rata and uncashed checks donated to two worthy charitable concerns is appropriate and ensure that all of the net proceeds of the settlement are directed at class members to the extent administratively possible. Plaintiffs contend (and Defendants do not contest) that both the Class Representative Payments and the Class Counsel Attorneys' Fees Payment are appropriate, and regardless they are subject to court approval at the Final Approval hearing. Finally, the expected Settlement Administrator's fees and costs of less $25,000 are in line with wage-and-hour settlements of this type and size.

### 3.    The Settlement Falls Well Within the Range of Possible Approval.

The Settlement falls within the range of possible approval. To evaluate this criterion, which focuses on "substantive fairness and adequacy," "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig*., 484 F. Supp. 2d at 1080. The Settlement should be approved because it confers a substantial benefit on the Class Members, while proceeding with litigation would impose significant risk.

#### a.    Liability Is Contested, and the Settlement Provides Class Members Substantial Monetary Relief.

Plaintiffs' counsel conducted a thorough investigation into the facts of this class action and diligently pursued an investigation of Class Members' claims against Defendants. Mallison Decl. ¶¶43-51. Plaintiffs' counsel interviewed dozens of witnesses, thoroughly reviewed and analyzed thousand of pages of documents produced by Defendants, and produced an accurate assessment of the number of possible violations at issue. *Id*.

For its part, Defendants contest liability in this action, is represented by talented counsel, and is prepared to vigorously defend against these claims if the action is not settled. If the litigation proceeds, Plaintiffs would face significant risk of success. For example, a primary cause of action in this case revolves around the provision of meal periods. However, the meaning of an employer's obligation to provide meal periods under California law is currently before the California Supreme Court (*see Brinker Restaurant Corp. v. Superior Court (Hohnbaum)*, 165 Cal. App. 4th 25 (2008) (review granted)), and resolution of the issue cannot be predicted with certainty. As such, there is significant risk that legal developments could seriously diminish the value of Plaintiffs' claims. Moreover, even if Plaintiffs could demonstrate such violations, there still would be substantial risk the Class would not be certified by the Court. There is also a substantial risk that Defendants would prevail in its asserted defenses.

The Settlement provides for a substantial recovery. Even if Plaintiffs were to prevail, they would be required to expend considerable additional time and resources potentially outweighing any additional recovery obtained through successful litigation. In any case, continued litigation would clearly delay payment to the Class.

As such, the Settlement with Defendants for the consideration and on the terms set forth in the Settlement is fair, reasonable, and adequate and is in the best interest of the Settlement Class in light of all known facts and circumstances, including the risk of the significant delay. *See* Mallison Decl. ¶¶43-51. The Settlement is in the best interest of judicial efficiency in this case as it would obviously eliminate a lengthy and intense class action lawsuit from this court's calendar. *Id*.

### b.    The Release Is Appropriate Given Plaintiffs' Claims.

As described above, as part of the Settlement, the Class Members will be deemed to have released all those claims arising from the allegations that they were or are improperly compensated under federal, California, or local law. Settlement, § III.G.2. These released claims appropriately track

the breadth of Plaintiffs' allegations in the action and the settlement does not release unrelated claims that class members may have against defendants. Notably, the release also releases class members from any complaint related counter or cross-claims, if any, that defendants may have against plaintiffs.

**B.    Conditional Certification of a Settlement Class Is Appropriate.**

Pursuant to Rule 23(c)(1), Federal Rules of Civil Procedure, the Court may "make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000) (citing Fed. R. Civ. P. 23(c)(1)). Conditional approval of the class is appropriate where the plaintiff demonstrates (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation; and one of the three requirements of Rule 23(b) also is met.

Here, the proposed class is comprised of all individuals who have been employed by Defendants in California as non-exempt Dairy workers during the period from August 1, 2004 and September 21, 2009. There are approximately 150 Class Members.

**1.    The Numerosity Requirement Is Met.**

The numerosity requirement is met if the class is so large that joinder of all members would be impracticable. *Gay v. Waiters' & Dairy Lunchmen's Union*, 489 F. Supp. 282 (N.D. Cal. 1980), *aff'd*, 694 F.2d 531 (9th Cir. 1982). Here, the count of approximately 150 similarly situated Class Members satisfies the numerosity requirement.

**2.    The Commonality Requirement Is Met.**

Here, for purposes of the Settlement only, the parties agree that common questions of both fact and law exist regarding Defendants' alleged failure to abide by federal and state wage-and-hour law, including:

- whether Defendants failed to provide Dairy workers with required meal periods;

- whether Defendants failed to pay Dairy workers wages for meal periods during which they remained on duty;

- whether Defendants authorized and permitted the Dairy workers to take required rest periods;

- whether Defendants failed to pay Dairy workers an additional hour of wages for missed meal periods and rest breaks;

- whether Defendants failed to pay all legally required minimum wages and overtime compensation to hourly production workers;

- whether hourly production workers are owed waiting time penalties because Defendants allegedly willfully failed to pay them additional wages for missed meal periods and rest breaks, and for meal periods taken during which they remained on duty, upon the termination of their employment; and

- whether Defendants' business practices violated Business and Professions Code section 17200 *et seq.*

### 3.    The Typicality Requirement Is Met.

"Rule 23(a)(3) requires that the claims of the named parties be typical of the claims of the members of the class." *Fry*, 198 F.R.D. at 468. "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Plaintiffs' claims are essentially identical with the class as whole as they are Dairy workers who were paid under the same pay practices as every other class member.

### 4.    Adequacy of Representation.

To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiffs must show that: "(1) that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, (2) that he or she has obtained adequate counsel, and (3) that there is no conflict between the individual's claims and those asserted on behalf of the class." *Fry*, 198 F.R.D. at 469.

The adequacy of representation requirement is met here because Plaintiffs have the same interests as the remaining members of the Settlement Class, there is no conflict between the named Plaintiffs' claims and those of the other Class Members, and Plaintiffs are represented by experienced and competent counsel who has experience in litigating over 40 wage and hour class action cases.

### 5.    Class Certification Is Proper Under Rule 23(b)(3).

In addition to demonstrating the four prerequisites of Rule 23(a), class certification requires a showing that certification is proper under one of the three requirements of Rule 23(b).

Here, the parties agree for purposes of the Settlement only that certification of the Class is appropriate under Rule 23(b)(3) because "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and…a class action is superior to

1    other available methods for the fair adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

2        **D.    The Proposed Notice, the Claim Form, the Form of Election Not to Participate, and the Notice Plan Are Fair and Adequate.**

3

4    "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*,

5    150 F.3d at 1025. A class action settlement notice "is satisfactory if it 'generally describes the terms of

6    the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

7    forward and be heard.'" *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004)

8    (quoting *Mendoza v. U.S.*, 623 F.2d 1338, 1352 (9th Cir. 1980)).

9        Here, the proposed Class Notice (Settlement, Exh. 2), and the manner of notice agreed upon by

10   the parties (Settlement, § III.E.2.) is "the best notice practicable," as required under Rule 23©(2)(B),

11   Federal Rules of Civil Procedure.  All Class Members can be identified and the Class Notice and the

12   related materials (the Claim Form, Settlement, Exh. 3, and the form of Election Not to Participate in

13   Settlement, *id.*, Exh. 4) will be mailed directly to each Class Member. The Class Notice adequately

14   informs Class Members of the nature of the litigation, the essential terms of the Settlement, and how to

15   make a claim under the Settlement, object to or comment on the Settlement, or elect not to participate in

16   the Settlement.  Further, the Class Notice identifies Class Counsel, specifies the amounts of the Class

17   representative payments, Class Counsel Attorneys' maximum fees payment, and Class Counsel

18   maximum litigation expenses payment that Plaintiffs and Class Counsel will seek, and explains how to

19   obtain additional information regarding the action and the Settlement.

20       Specifically, within 30 days after the Court grants preliminary approval of the Settlement,

21   Defendant will provide the Settlement Administrator with the containing the name and current or last

22   known address of each Class Member, as well as other data necessary to calculate Settlement Shares and

23   administer the Settlement.  Settlement, § III.F.2.a.  The Class Notice and other materials will be mailed

24   by the Settlement Administrator within 10 days following Defendants' delivery of the Class Members'

25   data.  *Id.*, § III.F.2.b.  The Settlement Administrator also will send a reminder notice fourteen days

26   before the deadline for Class Members to submit claims. *Id.*, § III.F.2.e.  The Settlement Administrator

27   will use the National Change of Address database to locate any Class Members whose Notices are

28   returned as undeliverable.  *Id.*, § III.E.  Not later than when the parties file their motion for final

approval of the Settlement, the Settlement Administrator will submit a declaration describing efforts made to locate all Class Members. *Id.*, § III.F.2.f.

In sum, the procedures set forth in the Settlement provide the best possible notice to the Class Members.

**E.    Rust Consulting, Inc., Should Be Appointed the Settlement Administrator.**

The parties have agreed upon and propose that the Court appoint Rust Consulting, Inc., to serve as the Settlement Administrator.  Rust Consulting is very experienced in administering wage-and-hour class action settlements, and has bid its fees and costs for this Settlement at under $25,000.

**F.    Proposed Schedule.**

Plaintiffs propose the following schedule for approval of the Settlement:

| Date | Event |
|---|---|
| 09/21/09 | Preliminary Approval hearing (all dates that follow assume this date) |
| 10/05/09 | Defendants to provide to Settlement Administrator with an electronic data base containing Class Member contact information and data necessary to calculate settlement shares (14 days after Preliminary Approval) |
| 10/15/09 | Settlement Administrator to mail Notice Packets to all Class Members (10 days after receiving Class Member information) |
| 11/02/09 | Date for Settlement Administrator to contact Class Members who have not submitted Claim Forms to remind them of the of the upcoming deadline |
| 11/16/09 | Last day for Class Members to comment on or object to Settlement (30 days after mailing of Notice Packets), to mail valid Elections Not to Participate in Settlement, and to mail valid claims for Settlement Shares (30 days after mailing of Notice Packets) |
| 11/20/09 | Last day for Settlement Administrator to report to parties on Class Members who have elected not to participate in Settlement or who have submitted claims (7 days after the deadline for submission of Elections Not to Participate in Settlement and Claims Forms) |
| 11/25/09 | Last day for Settlement Administrator to serve on the parties |

| Date | Event |
|------|-------|
|  | and file with the Court statement of due diligence in complying with its obligations under the settlement. |
| 12/01/09 | Due date for motion for final approval of settlement and plaintiff' motion for class representative fee and class counsel's attorneys' fees and expenses (28 days before final approval hearing) |
| 12/14/09 | Final approval hearing |

## V.   CONCLUSION

For the reasons set forth above, the parties respectfully request that the Court grant their joint motion in its entirety and enter an order: (1) conditionally certifying the Settlement Class; (2) granting preliminary approval of the Settlement; (3) appointing Plaintiffs as the Class Representatives and Plaintiffs' counsel as the Class Counsel; (4) approving and directing the mailing of the Class Notice and related materials; (5) appointing Rust Consulting, Inc., as the Settlement Administrator; and (6) scheduling the Final Approval Hearing for December 14, 2009 or as soon thereafter as is available and convenient for the Court.

Dated:  August 31, 2009.                    STAN S. MALLISON
                                            HECTOR R. MARTINEZ
                                            MARCO A. PALAU
                                            LAW OFFICES OF MALLISON & MARTINEZ


                                            By:  ____/s/ Stan Mallison_____
                                                         Stan S. Mallison
                                                     Attorneys for Plaintiffs