STAN S. MALLISON (SBN 184191)
HECTOR R. MARTINEZ (SBN 206336)
MARCO A. PALAU (SBN 242340)
LAW OFFICES OF MALLISON & MARTINEZ
1042 Brown Avenue
Lafayette, CA 94549
Telephone:    (925) 283-3842
Facsimile:    (925) 283-3426

Attorneys for Plaintiffs

UNITED STATES FEDERAL DISTRIC COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **LEOBARDO F. BENITEZ, PAULINO RODRIGUEZ, JOSE HERRERA, ELMER HUERE RUPAY, and ARTURO GIL ALCARAZ,** on behalf of themselves and all other similarly situated individuals,<br><br>**PLAINTIFFS,**<br><br>vs.<br><br>**JEFF WILBUR and LISA WILBUR (dba "the Mayflower Companies," "Mayflower Dairy," and "Rio Blanco Dairy")**<br><br>**DEFENDANTS.** | Case No. 1:08-cv-01122-LJO-GSA<br><br>**DECLARATION OF STAN S. MALLISON IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; CLASS CERTIFICATION; APPROVAL OF ATTORNEYS FEES AND COSTS; REPRESENTATIVE PAYMENTS; PAGA PAYMENTS; CLAIMS ADMINISTRATOR FEES; AND JUDGEMENT**<br><br>Date:    December 14, 2009<br>Time:    8:30 a.m.<br>Courtroom: 4<br>Judge:    Lawrence J. O'Neill |

I, Stan S. Mallison, declare the following:

1.  I am an attorney at law licensed to practice before all courts of the State of California and am a founding partner of the Law Offices of Mallison & Martinez. My firm and I are counsel for the Plaintiffs in the above-captioned case. I am familiar with the above-captioned litigation and the dispute from which it arises. All statements made herein are on personal knowledge unless otherwise stated. If called as a witness, I could competently testify as to matters stated herein.

2.  This is a wage and hour class action on behalf of Dairy workers employed by Jeff Wilbur and Lisa Wilbur doing business as "the Mayflower Companies," "Mayflower Dairy," or "Rio Blanco Dairy" (hereinafter collectively "Mayflower/Rio Blanco" or "Defendants") in around Tulare County California. The action is brought for alleged violations of California labor laws as described in the complaints filed in this court (Docket #2, 8, 20). Plaintiffs seek penalties for themselves, and other current and former employees, and the State of California pursuant to the California Labor Code Private Attorney General Act. See Amended Complaint (Docket #20).

## I. COUNSEL'S QUALIFICATIONS

### A. Firm Description

3.  The Law Offices of Mallison & Martinez is a class action law firm with offices in Lafayette and Bakersfield, California. This firm was created in 2005 by Stan Mallison and Hector Martinez, attorneys with extensive class action and complex litigation experience at: (1) Lerach Coughlin Stoia & Robbins, (2) Milberg, Weiss, Bershad, Hynes, & Lerach, (3) Van Bourg Weinberg Roger & Rosenfeld (the largest union side labor law firm in the country), (4) Carter & Garay (a boutique class action law firm), and (5) California Rural Legal Assistance (the largest federal legal services provider to farm-workers in the country). The firm is nearly exclusively engaged in class action and private attorney general practice in employment law on behalf of employees. We have three full time attorneys on staff, and full time paralegal and employ several part-time professionals and assistants as needed. Mallison & Martinez researches and develops class action wage cases and litigates them independently, as in this case, or with prominent co-counsel.

4.  The firm employs a research model approach to wage and hour class action litigation. In particular, we believe that the best way to litigate a case is to understand the facts and issues better than

the employer, their counsel, and their experts.  We do this by, where appropriate, relying heavily upon technology, investing enormous amounts of time and energy into legal and factual investigations, both pre-filing and early in the litigation, and by developing comprehensive factual and legal expertise in the specialized areas in which we litigate.

5. The success of this model is exemplified by the following sample of cases the firm is currently litigating or has resolved:

a. In re Rhodia Erisa Litigation (S.D.N.Y):  This is ERISA Class Action on behalf of 3945 U.S. based workers of Rhodia Inc. (Appointed Co-lead Counsel with Robbins Umeda & Fink) ($2.4 million settlement approved).

b. Ibañez et al. v. Food Specialists Inc. et al. (Alameda Superior Court (complex)): this is a class action wage and hour case on behalf of food service employees of Scott's Seafood Restaurants.  Mallison & Martinez is the class counsel ($1.48 million settlement approved).

c. Korbel Winery (E.D.Cal.):  This is a mid-sized wage and hour class action case in the Eastern District of California involving approximately 600 winery workers. Mallison & Martinez has been appointed sole Class Counsel. ($750,000 settlement approved)

d. Don Roberto Jewelers (Santa Barbara Superior):  This is a mid-sized wage and hour class action case in the Santa Barbara Superior Court involving approximately 1400 Jewelry Salespersons. Mallison & Martinez has been appointed sole Class Counsel and ($1.225 maximum settlement approved)

e. Glenn Block v. eBay, Inc. (Santa Clara Sup.):  This is a consumer class action case filed on behalf of several million eBay consumers who were impacted by eBay's "bid against yourself" policy (co-counsel Lerach Coughlin Stoia Geller Rudman & Robbins).  (Settlement approved for $2.1 million).

f. In re Titan Corporation Securities Litigation, (S.D. Cal.):  This is Securities Class Action on behalf of tens of thousands of Titan Corporation investors. (Primary investigation and litigation conducted by Stan S. Mallison who also co-managed confirmatory discovery). ($61.5 million settlement approved).

g. Sierra La Verne, (Los Angeles Sup.):  This is a mid-sized wage and hour class action case in the Los Angeles Superior Court involving approximately 300 golf course and resort workers (co-counseled with the law firm of Matern & Rastegar, Memorandum of Understanding signed for $725,000)

h. Vasquez v. Coast Roofing (E.D.Cal.):  This is a mid-sized wage and hour class action case in the Eastern District of California involving hundreds of roofing workers. Mallison & Martinez is the originating and sole counsel appearing in the case (Motion for Preliminary approval of Class settlement of $300,000 preliminarily approved).

i. <u>ABM California Industries Overtime Cases</u> (San Francisco Sup.): This is a large class action wage and hour case on behalf of approximately 20,000 California janitorial workers against ABM Industries Inc. and its subsidiaries. Mallison & Martinez are the originating attorneys and the case is litigated with Weinberg, Roger, and Rosenfeld and Rastegar & Matern.

j. <u>DM Camp & Sons et al.</u> (E.D. Cal.): This is a large wage and hour class action cases filed on behalf of approximately 5,000 migrant/seasonal farm-workers who were not paid minimum wages by a group of the largest grape growers in the Central Valley (Appointed as co-lead counsel).

k. <u>Giumarra Vineyards </u>(E.D. Cal.): This is a large wage and hour class action cases filed on behalf of approximately 5,000 migrant/seasonal farm-workers who were not paid minimum wages by a group of the largest grape growers in the Central Valley (Appointed as co-lead counsel).

l. <u>MAT Landscape (San Joaquin Sup.)</u>: This is a mid-sized wage and hour case in the San Joaquin Superior Court involving hundreds of Landscape workers. (Mallison & Martinez is co-counsel with California Rural Legal Assistance – settlement discussion underway).

m. <u>La Salsa Overtime Cases (Santa Barbara Sup.)</u>: This is a large wage and hour class action case in the Ventura Superior Court involving thousands of La Salsa Restaurant workers. Mallison & Martinez are the originating attorneys and primary attorneys on the case (Class certification hearing scheduled for November 2009)

n. <u>Ramirez et al. v. Milgard Manufacturing (N.D. Cal)</u>: This is a large wage and hour class action case in the Northern District of California involving thousands of Milgard factory workers. Mallison & Martinez is the originating and sole counsel appearing in the case (Class Certification tentatively approved)

o. <u>Redfern/Empire Landscape (Alameda Sup.)</u>: This is a mid-sized wage and hour class action case in the Alameda Superior Court involving hundreds of Landscape workers. Mallison & Martinez is the originating and sole counsel appearing in the case. (Class certification motion on file)

p. <u>TBS Couriers (Alameda Sup.)</u>: This is a mid-size wage and hour class action cases in the Alameda Superior Court involving hundreds of delivery drivers. Mallison & Martinez is the sole plaintiffs counsel appearing in the case.

The above listing is just a sample of the dozens of class action cases that Mallison & Martinez are actively involved.

**B.     Attorneys on the Case**

6.     I received my Bachelor of Art degree in Philosophy and Political Science from the California Polytechnic University at Pomona, California in 1990, graduating magna cum laude and first

in both departments. I earned my Masters in Economics from the University of California at Riverside in 1993, where I had been admitted to, and substantially progressed through, the Economics Ph.D program. I earned my law degree from Stanford University in 1996, graduating with honors. During law school, I interned with the National Labor Relations Board, both at the Division of Judges in San Francisco as well the supervision of Chairman of the NLRB William B. Gould in Washington D.C.

7. Between 1996 and 1998, I worked in complex labor and employment litigation for the law firm of Van Bourg, Weinberg Roger and Rosenfeld, the largest union-side labor law firm in the country.

8. From 1998 to 2004 I worked for Milberg Weiss Bershad Hynes & Lerach ("Milberg Weiss") and joined Lerach Coughlin Stoia & Robbins ("Lerach Coughlin") when the Milberg firm divided in 2004 working there until February 2005. My work at these firms consisted entirely of class action and private attorney general act work and included work on complex and large cases including: In Re Enron Securities Litigation; Mariana Island Garment-Worker Cases (a $20 million wage and hour settlement on behalf of 20,000 migrant workers on the island of Saipan); In Re 3Com Securities Class Action (settlement of $259 million), a Federal Court challenge to the sufficiency of Federal Department of Transportation's NAFTA Truck safety regulations; In re Pemstar Securities (settlement of $12 million); Block v. eBay (settlement of $2.1 million); a Federal Court challenge to President Bush's Executive Order re: Project Labor Agreements, and dozens of other cases. As a result of my expertise in economics, I spent a considerable amount of his time at Milberg Weiss and Lerach Coughlin as liaison to experts and I continue in that role at Mallison & Martinez.

9. Since starting Mallison & Martinez with Hector Martinez, we have filed approximately 50 wage and hour class action cases. In the Erisa Class Action case, in re Rhodia Erisa Securities, the court approved our fee request that was justified based upon a fee rate of $525 and a multiplier of 1.59 (or an effective rate of $835 an hour). Fee awards for the firm have recently been awarded using as a partial basis for the award my lodestar at a rate of $525 in three additional cases: 1) by Judge Brick of the Alameda Superior Court in <u>Ibañez et al. v. Food Specialists Inc.</u> (Case No. RG 06 293981), 2) by Judge O'Neill of the Federal Court for the Eastern District of California in Ruiz et al v. Korbel (Case No. 1:08-cv-000417-LJO-SMS), and 3) by Judge Staffel of the Santa Barbara Superior Court in <u>Miranda</u>

et al v. Don Roberto Jewelers, Inc (Case No. 01265947). I believe that my wage and hour class action rate of $525 an hour is a fair rate for my work given my experience level and success in this field.

10. Mr. Martinez received his Political Science Bachelor of Art degree in 1993 from the University of California at Davis. Mr. Martinez grew up in a socially conscious farm-worker community, which motivated Mr. Martinez to work for the benefit of low-wage workers. Beginning in the mid-nineties, at the California Institute for Rural Studies, Mr. Martinez conducted extensive research on California's agricultural industry and the substandard environmental, health and working conditions and its impact on farmworkers and their families. Mr. Martinez then attended law school and earned his law degree from the Golden Gate University School of Law in 1998. During his law studies, he worked as a law clerk with Van Bourg, Weinberg, Roger and Rosenfeld, the largest union-side labor law firm in the country, under the direct supervision of named partner David Rosenfeld. From 1999 to 2004, Mr. Martinez worked at California Rural Legal Assistance, Inc. ("CRLA"), the largest non-profit law firm dedicated to farm-worker issues in the country. His work at CLRA included numerous representative private attorneys general actions under California's Unfair Competition Law, Business & Professions Code Sections 17200 *et seq.*, which were brought on behalf of thousands of agricultural employees and the general public. During his time with CRLA, Mr. Martinez was nominated for and received a fellowship with the California Wellness Foundation Violence Prevention Initiative, for his work with farm-worker youth throughout California.

11. Mr. Martinez and Stan S. Mallison formed the law firm of Mallison & Martinez in June 2005. As a partner of the firm, Mr. Martinez currently litigates several farm and low-wage worker wage and hour class actions. Since starting Mallison & Martinez with Stan Mallison, Mr. Martinez has litigated in over 50 wage and hour class action cases. In the Erisa Class Action case, in re Rhodia Erisa Securities, the court approved our fee request which was justified based upon a fee rate of $525 for Mr. Martinez and a multiplier of 1.59 (for an effective rate of $835 an hour). Fee awards for the firm have recently been awarded using as a partial basis for the award my lodestar at a rate of $525 in three additional cases: 1) by Judge Brick of the Alameda Superior Court in Ibañez et al. v. Food Specialists Inc. (Case No. RG 06 293981), 2) by Judge O'Neill of the Federal Court for the Eastern District of California in Ruiz et al v. Korbel (Case No. 1:08-cv-000417-LJO-SMS), and 3) by Judge Staffel of the

Santa Barbara Superior Court in Miranda et al v. Don Roberto Jewelers, Inc (Case No. 01265947). I believe that Mr. Martinez's wage and hour class action rate of $525 an hour is a fair rate for his work given his experience level and success in this field.

12. Mr. Palau is admitted to practice law in California and New York. He represents workers in wage and hour class actions and employment discrimination. Mr. Palau earned is law degree from Columbia University, New York in 2005, where he served as an Editor for the Columbia Human Rights Law Review and Co-Managing Editor for the Jailhouse Lawyer's Manual (Spanish ed.). He earned MBA and BS degrees from California State University in 1999 and 1997, respectively. Prior to joining Mallison & Martinez, Mr. Palau was a staff attorney with California Rural Legal Assistance ("CRLA"), where he represented indigent individuals in civil rights matters, including federally subsidized housing and worker's rights issues. Mr. Palau is currently litigating dozens of class actions and employment discrimination as an experienced mid-level wage and hour attorney at Mallison & Martinez, including cases involving thousands of workers in the janitorial, restaurant, manufacturing, retail, construction, and agricultural industries.

13. Since joining Mallison & Martinez, Mr. Palau has litigated in dozens of wage and hour class action cases. Fee awards for the firm have recently been awarded using as a partial basis for the award his lodestar at a rate of $395 in three additional cases: 1) by Judge Brick of the Alameda Superior Court in <u>Ibañez et al. v. Food Specialists Inc.</u> (Case No. RG 06 293981), and 2) by Judge O'Neill of the Federal Court for the Eastern District of California in Ruiz et al v. Korbel (Case No. 1:08-cv-000417-LJO-SMS); and 3) by Judge Staffel of the Santa Barbara Superior Court in Miranda et al v. Don Roberto Jewelers, Inc (Case No. 01265947). I believe that a fair rate for Mr. Palau's work in contingent wage and hour class action cases, for purposes of lodestar cross-check analysis, is $395 an hour.

14. Mallison & Martinez has had, and continues to have adequate resources to vigorously prosecute this case on behalf of the Class representatives and the Class members. Plaintiffs' counsel has spared no expense or taken any short cuts in this litigation and has hired a prominent database consultant for this case to aid in the confirmatory discovery in this case.

15. Neither I, nor any member of the firm, have any personal affiliation or family relationship with the plaintiffs and proposed Class Representatives. The only relationship with these plaintiffs in this current litigation is the attorney-client relationship.

16. The firm chose the proposed class representatives because we believed that they provided good representation of the breadth of the class, both in terms of job categories, geographic location, and employment status.

17. The class representatives carried out all required tasks in this case to help us pursue this action, providing us with information, documents, insights, opinions, and necessary decisions to make this case successful. The class representative spent considerable time in their efforts on behalf of the class and deserve the modest incentive award requested in this case.

## II. ALLEGATIONS OF THE COMPLAINT

18. This is a dairy wage and hour class action and PAGA case. Such cases tend to have very similar facts and it is notable that the companion case being heard for final settlement has nearly identical facts. That does not mean that either case was not difficult to litigate or investigate – only that there is an industry practice at issue in this case. The core of Defendants' violations revolve around this industry practice of a systematic failure to pay minimum and overtime wages; failure to keep accurate time records; failure to provide meal or rest breaks (or pay the statutory compensation due); and other related wage and hour issues. Plaintiffs also seek penalties for themselves, other current and former employees and the State of California under the California Labor Code Private Attorney General Act, Labor Code §2698 et seq.

19. Consistent with counsel's practice, prior to the filing of the complaint Plaintiff's counsel did an extensive investigation of the claims of class representatives to confirm the allegations. This investigation involved the extensive review of employee records as well as interviews with numerous additional class members. As is the common practice for plaintiffs' counsel, the class representatives participated in the crafting of complaint working through the complaint line-by-line providing investigative detail and witness names for factual sections of the complaint. Plaintiffs' counsel explained the law and legal strategies applied for the legal sections of the complaint as well. From this

interaction with the clients, review of employee documents, and discussions with other witnesses, evolved the complaint containing the following causes of actions and underlying factual and legal allegations:

### A.     **Overtime & Regular Wages**

20. Plaintiffs allege that Defendants failed to pay for all time worked. This claim stems from the practice of paying dairy workers on a salary basis while working these employees in excess of 10 hours without any additional compensation. This is a very typical in the Dairy industry and its existence was confirmed by the witnesses and records.

21. California Wage Order 14 requires payment of overtime for work in excess of 10 hours in a day. Plaintiffs, individually and on behalf of the Class, may enforce this requirement pursuant to Labor Code §1194(a).

22. Pursuant to Labor Code § 1194, Defendants' practices constitute a minimum wage violation and Defendants are liable for wages and liquidated damages. In addition, this unpaid time is also recoverable as overtime to the extent that including this time would put an employee over ten hours in a day or sixty in a week.

### B.     **Failure to Provide Meal Periods**

23. As confirmed in witness interview and employee documents, Plaintiffs allege that Class members were not provided with meal periods. The applicable wage order issued by the Industrial Welfare Commission is Wage Order 14-2001, which provides for full 30 minute meal periods for all shifts in excess of six hours and two full 30 minutes meal periods for shifts in excess of 10 hours. Plaintiffs allege that proper meal periods were not provided to employees in this case.

24. Pursuant to California Labor Code §226.7, employers are required to pay additional wages for failure to provide meal periods in conformance with Wage Order 14.

25. California Labor Code §226.7 states:
(a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.

(b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

### C.     Rest Period Wages

26.    As is common in the Dairy industry because of a general failure to provide any relief to workers, Plaintiffs allege that they were not provided rest periods or paid additional wages in lieu thereof. Defendants did not schedule rest periods and actually discouraged employees from taking them, by understaffing the Dairy and overworking employees.

27.    California Labor Code §226.7 states:

(a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.

(b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

28.    The requirements are found in section 12 of Industrial Welfare Commission Wage Order 14-2001 which requires the employees be provided with one ten minute rest break for every four hours of work or major fraction thereof. Therefore for a shift of over 10 hours, employees would be entitled to three breaks.

### E.     Wage Statement Violations

29.    Plaintiffs also allege that Defendants violated Labor Code § 226 by failing to provide accurate, itemized wage statements, in that the wage statements do not account for all hours worked (e.g., off-the-clock) and, consequently, do not account for all regular and overtime wages owed (e.g., off-the-clock time). In other words, Defendant failed to provide "accurate itemized statements" pursuant to California Labor Code 226 because the wage statements:

  a.    Falsely understated the gross wages earned by failing to pay for all hours worked.

  b.    Omitted or falsely understated the total hours worked.

  c.    Falsely stated the net wages earned.

30. California Labor Code § 226(e) and (g) provides for penalties for the violations described above.

### F. Waiting Time Penalties

31. Plaintiffs also allege that Defendants failed to timely pay plaintiffs and terminated class members their full pay at the time of termination. Plaintiffs believe that based upon the various violations, rest and meal, overtime or unpaid wages, essentially all terminated employees were not paid all of their wages within 30 days of termination.

32. California Labor Code Sections 201 and 202 provide that such payment must be made within a few days of such termination. Defendants failed to timely pay Plaintiffs and the Class all of their wages due for work performed and this failure continued through the time in which Plaintiffs and the Class quit or were discharged from their employment with Defendant. As a result, Defendant has violated California Labor Codes §§ 201 and 202. As such, Plaintiffs and the class are entitled to penalties pursuant to California Labor Code §203.

## III. Litigation History of this Case

33. Plaintiffs have conducted substantial discovery and/or investigation regarding class certification and the merits of their claims. As a result, Plaintiffs received from Defendants the critical payroll, sales and timekeeping data and documents at issue in this case – the goal in all wage and hour cases. This production comprised thousands of pages of documents as well as a list of class member names and contact information.

34. Defendants' timekeeping, payroll and sales transaction system is heavily paper based requiring Plaintiffs' counsel to scan and copy, and laboriously review thousands of pages of paper records and create a data analysis tool to be able to prove liability and damages. Much of the document and data review took place with Plaintiffs and other witnesses who guided counsel through their own time and payroll records, strengthening counsel's understanding of the case, as well as their ability to litigate and mediate the case effectively. These records were core to the investigation and resolution of this case as it demonstrated in an objective manner what occurred at the workplace at all times during the class period.

35.     Plaintiffs also contacted a large number of the 109 class members described above, and continues to do, to confirm the basic allegations of the complaint, to arrange for declarants for mediation, litigation, class certification, and trial purposes, and to confirm the fair and reasonable basis of the settlement.

**IV.     Settlement**

36.     This case was resolved through the efforts of Mediator Judge Broadman and resolved by means of a mediator's proposal on the terms proposed to this court. Although the initial mediation was unsuccessful at obtaining a settlement the parties continued to work with Judge Broadman and he eventually resolved the case by means of his mediators proposal.  Judge Broadman reviewed financial records, which were also provided to plaintiffs. Plaintiffs' counsel has negotiated numerous class action wage and hour settlements and believe that the settlement would not have been improved by the use of a mediator in this case.  The Settlement covers approximately 109 current and former Defendants Dairy employees who worked between August 1, 2004 to September 21, 2009 and provides substantial recovery for class members.

37.     Under the Settlement, Defendants will make an immediate Gross Settlement Payment of $400,000.

38.     This payment will cover Settlement Shares to be paid to Class Members who submit valid claims; the employer share of payroll taxes on the Settlement Shares; a $10,000 payment to the California Labor and Workforce Development Agency for its share of the settlement of civil penalties; the Settlement Administrator's reasonable fees and expenses (estimated to be less than $25,000); and (subject to court approval) payments to Plaintiffs, in addition to their Settlement Shares, of $5,000 each in compensation of their services as Class Representatives and payments to Class Counsel of up to $133,333 for their reasonable attorneys' fees and $10,000 in expenses incurred in investigating the case, prosecuting the case, preparing for and negotiating at the mediation, documenting the Settlement, securing approval of the Settlement, and related tasks.  Settlement, § III.A.-C.  There will be no reversion of the Gross Settlement Payment to Defendants.

39.     After the other amounts are deducted, the Gross Settlement Amount (then called the "Net Settlement Amount") will be distributed as Settlement Shares to all Class Members who submit valid claims (see Settlement, § III.E.3., Exh. B), based upon the following allocation formula:

> The Settlement Share for each Claimant will be based on (a) that Claimant's total number of Months of Employment during the Class Period (b) divided by the aggregate number of Months of Employment of all Participating Class Members during the Class Period (with the division rounded to four decimal places) (c) multiplied by the value of the Net Settlement Amount.

Agreement, § III.D.1. The primary benefit of this formula is that it relies upon objective evidence of the total months of employment, which Class Members can easily review and confirm for themselves. This information is readily available from Defendants' records, and the Settlement Administrator can apply the formula in a fair and transparent manner.

40.     Given the sixty-nine actual claimants, and if all amounts sought under the Settlement are awarded, a Class Member's average claimant Share will be approximately $2850.

41.     Plaintiffs' counsel has reviewed the method of distribution and has determined that, on the whole, it serves the purpose of providing a simple and readily determinable method for distribution, while also allowing for a distribution that corresponds closely to the alleged damages and likely recoveries, which are based upon various theories of liability. Plaintiffs' counsel considered other, more complicated methods, but determined that although these methods have some merit, that they were not without controversy and would likely lead to a myriad of objections regarding their formulation and implementation. The formula employed in the Settlement is commonly used in wage-and-hour cases, and is appropriate in this case, where most workers experience the same working conditions and have similar claims that roughly correlate with the number of hours that they have worked. Id. Further, although there might be marginally better theoretical methods for calculating allocations amongst class members, the costs of obtaining and processing the information necessary and to make such calculations (especially given defendants' paper based payroll system) would likely outweigh any benefits of using a more complex calculation method. The above method is simple, efficient, and uncontroversial and should be approved by the court.

42. Because not all Class Members submit claims, the residue is to be redistributed to those Class Members who do submit valid claims. Settlement, § III.D.3. The settlement agreement provides that that in the event that checks issued to Class Members are not cashed, these monies will be donated to two public interest organizations on a 50%/50% basis: 1) the California Consumer Protection Foundation and 2) the Tulare Salvation Army. Id., § III.F.10. Because these public interest organizations serve low income workers these donations are appropriate. Because these monies apply <u>only to uncashed checked of class members who actually make claims</u> it is unlikely to be a substantial amount of money.

43. The scope of the release by all Participating Class Members (all Class Members other than those who elect not to participate in the Settlement) tracks the scope of Plaintiffs' allegations:

> Participating Class Members. As of the date of the Judgment, all Participating Class Members hereby fully and finally release Defendants, and its parents, predecessors, successors, subsidiaries, affiliates, and trusts, and all of its employees, officers, agents, attorneys, stockholders, fiduciaries, other service providers, and assigns, and Defendants releases Class Members, from any and all claims or counterclaims, known and unknown, for or related to all claims based on or arising from or related to the allegations made in the Action, including the allegations that they were or are improperly compensated under federal, California, or local law (the "Class's Released Claims").

Settlement, § III.G.2.

44. Any Class Member who so wished to object to, or comment on, the Settlement; or elect not to participate in the Settlement has been provide this opportunity. The Class Notice fully explains the objection/comment and opt-in procedures. Settlement, § III.F.4., Exh. C.

45. Plaintiffs reserved the right to void the Settlement if confirmatory discovery conducted during the approval process reveals that the recovery is not fair, adequate and reasonable under the circumstances. Plaintiffs have completed this confirmatory discovery as a means of ensuring the fairness of the settlement for the class and fully carrying out their obligations to the class and the court in this regard. Ex. 1 § III.F.6. Plaintiffs counsel has concluded that there is no reason to reject the settlement based upon this confirmatory discovery.

46. Plaintiffs and their counsel seek, and Defendants has agreed not to oppose, awards to Plaintiffs of Class Representative Payments of $5,000 each, in addition to their Settlement Shares, in

compensation for their services as Class Representatives; and awards to Class Counsel of a Class Counsel Attorneys' Fees Payment of not more than $133,333 or 33-1/3% of the Gross Settlement Amount. The lodestar in this case was $120,212.50. As such the amount requested represents a modest multiplier of 111% of the fees incurred in this case.

47. Counsel is also requesting a Class Counsel Litigation Expenses Payment of $6265. Settlement, § III.B.1-2. These costs lie largely with mediation fees of Judge Broadman, expert consulting fees; Printing and scanning costs ; filing fees, travel, and electronic research.

## V.    Opinion of Class Counsel and Representatives and Due Diligence

48. Plaintiffs have conducted substantial document discovery regarding class certification and merits. Plaintiffs' counsel is of the view that central to any certification, litigation, mediation or resolution of a wage and hour case is obtaining the core payroll and timekeeping records. Plaintiffs issued document requests and interrogatories to Defendants requesting the critical documents at issue in this case including Defendants' payroll and timekeeping data and the names and contact information for Defendants' former and current employees. After meeting and conferring regarding these issues, and in response to these requests, Defendants produced the core payroll and timekeeping information as well as the employee names and contact information.

49. Defendants' timekeeping system is heavily paper based requiring Plaintiffs to laboriously review. Much of the document and data review took place with clients and other witnesses who guided counsel through their employee time and payroll records strengthening Plaintiffs counsel's understanding of the case, as well as Plaintiffs counsel's ability to litigate effectively. Plaintiffs have hired an expert in data and document analysis, Aaron Woolfson, to confirm their analysis of the documents and data produced, the ability to manipulate this data into a database, and to confirm counsel's evaluation of these documents as a due diligence measure.

50. Based on Mallison & Martinez's investigation and discovery in this case, coupled with expert analysis, and in consultation with the proposed Class Representatives, I am of the opinion that the class settlement with Defendant for the consideration and on the terms set forth in the Settlement Agreement is fair, reasonable and adequate and is in the best interest of the putative class members,

including defendant's current and former workers, in light of all known facts and circumstances, including the risk of significant delay, the defenses asserted by Defendant, the amount of potential damages in this case and uncertainties regarding class certification, success on the merits at trial and potential appellate review. It is my understanding and belief that the amount in question will not put Defendant's operations at risk or endanger the continued employment of currently employed class members. If the litigation proceeds, Plaintiffs would face significant risk of success. For example, a primary cause of action in this case revolves around the provision of rest and meal periods. However, the meaning of an employer's obligation to provide meal periods under California law is currently before the California Supreme Court (see Brinker Restaurant Corp. v. Superior Court (Hohnbaum), 165 Cal. App. 4th 25 (2008) (review granted)), and resolution of the issue cannot be predicted with certainty. A defense ruling in this case could serious impair plaintiffs' abilities to proceed on these primary causes of action. As such, there is significant risk that legal developments could seriously diminish the value of Plaintiffs' claims. Moreover, even if Plaintiffs could demonstrate such violations, there still would be substantial risk the Class would not be certified by the Court. There is also a substantial risk that Defendants would prevail in its asserted defenses.

51.   The Settlement provides for a substantial recovery of approximately $2850 per claimant. Even if Plaintiffs were to prevail, they would be required to expend considerable additional time and resources potentially outweighing any additional recovery obtained through successful litigation. In any case, continued litigation would clearly delay payment to the Class. As such, the Settlement with Defendants for the consideration and on the terms set forth in the Settlement is fair, reasonable, and adequate and is in the best interest of the Settlement Class in light of all known facts and circumstances, including the risk of the significant delay. The Settlement is in the best interest of judicial efficiency in this case as it would obviously eliminate a lengthy and intense class action lawsuit from this court's calendar.

52.   Since being retained by the proposed class representatives, Mallison & Martinez has had regular discussions and meetings with them regarding the progress of this litigation, the merits of the claims and the defenses asserted by defendants. The Class Representatives have actively participated in the investigation of the issues in this case and the negotiations leading to the settlement of this matter.

53. The Settlement was reached after informed, arm's length negotiations between the parties. Both parties conducted extensive investigation and discovery allowing them to assess the strengths and weaknesses of the case. The Settlement is the product of non-collusive negotiations. For its part, Defendants contests liability in this action, is represented by talented counsel, and is prepared to vigorously defend against these claims if the action is not settled. The terms of the settlement were proposed by an experienced mediator Judge Howard Broadman after significant analysis and review of the legal, factual, and financial issues in the case.

54. The Settlement provides for a payment of $400,000 by Defendants to cover all claims in this case - an substantial amount given the modest size of the class (including the fact of only 69 claimants), the financial condition of defendants, the  and the limited nature of the alleged violations at issue. All Settlement Shares to be paid under the Settlement are determined by the number of months each Class Member worked in a Covered Position from August 1, 2004 through approximately September 21, 2009. The claims rate is very high (64%). Regardless all unclaimed funds will be redistributed pro-rata to class member claimants in this case. The Settlement also provides that the funds from any claim checks that are actually written but not cashed will be provided to California Consumer Protection Foundation and the Tulare Salvation Army of Tulare. Plaintiffs contend (and Defendants will not contest) that both the Class Representative Payments and the Class Counsel Attorneys' Fees Payment are appropriate. Finally, the Settlement Administrator's fees (21,017) are in line with wage-and-hour settlements of this type (including extensive spanish translations) and size.

55. Based upon my conversations with them, and their declaration filed herewith, I know that Class Representatives believe that the settlement is fair and reasonable to all former and current Defendants workers and should be approved by the Court. The maximum award of $5000 for the class representatives is in line or more modest than typical awards in such cases and is justified by their efforts in this case.

## VI. Compliance with This Court's Preliminary Approval Order

56. On September 10, 2009 this Court granted preliminary approval of the Settlement. Compliance with this order is described in the Compliance report for Rust Consulting. Plaintiffs believe

17   DECLARATION OF STAN MALLISON IN SUPPORT OF
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT                CASE NO. 1:08-CV-01122-OWW-DLB

<pre>
</pre>

that all tasks have been carried out in substantial compliance with the letter and spirit of the order.

## VII.    Fees, Expenses, Claims Administration, and Incentive Awards

57.    Plaintiffs' counsel is requesting attorneys' fees of 33 1/3 % or a total of $133,333 which is 111% of the total lodestar in this case of $120,212.  The total amount of costs incurred by counsel is $6265. As described above, these costs largely revolved around mediation costs, travel costs, expert consultant fees, discovery and research costs.

58.    I have practiced class action litigation almost exclusively for more than a decade and am familiar with attorneys fees, cost, and incentive award issues.  I continue to co-counsel numerous cases with large class action firms and therefore interact with them on these issues regularly.  I am a member of the California Employment Lawyers Association ("CELA") and I am therefore in regular contact with other California attorneys who practice in the field of wage and hour class actions. Based on my participation in these organizations, my past experience, and my personal knowledge of the practices of other California attorneys who file and prosecute wage and hour class actions, a percentage of the recovery contingency fee of the type requested here is common in small wage and hour actions, both individual and class.  Such a fee is necessary given the expenses and risk of wage and hour litigation. Notably, there are very few law firms litigating wage and hour claims on behalf of low income construction workers in the Central Valley largely because they find these expenses and risks make such litigation undesirable and unprofitable.

59.    The requested attorneys' fees and reimbursement of costs and expenses are reasonable in light of the time and expense expended achieving the substantial benefits and should be approved.  Class Counsel reached this result for the Class at significant risk to themselves of recovering no fee.  Class Counsel were aware that the only way they would be compensated was to achieve a successful result. Yet, Class Counsel did not waiver in pursuing the interests of the Class, and invested the time and resources necessary to bring the Action to a successful conclusion.

60.    The requested attorneys' fees and reimbursement of costs and expenses are reasonable in light of the time and expense expended achieving the substantial benefits and should be approved.  Class Counsel reached this result for the Class at significant risk to themselves of recovering no fee.  Class

Counsel was aware that the only way they would be compensated was to achieve a successful result. Yet, Class Counsel did not waive in pursuing the interests of the Class, and invested the time and resources necessary to bring the Action to a successful conclusion.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Dated: December 1, 2009.

                                              /s/ Stan S. Mallison
                                                  Stan S. Mallison